UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MERIA I. RODRIGUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | 20 C 7608 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| TOWN OF CICERO, CICERO POLICE DEPARTMENT, LARRY DOMINICK, Town President, SERGE ROCHER, Deputy Director, Cicero Community Service Officers, OSCAR CLAY, First Deputy, Cicero Community Service Officers, CHRISTOPHER TOMOSINO, Assistant First Deputy, Cicero Community Service Officers, RICARDO PINA, Supervisor, Cicero Community Service Officers, ESTATE OF LARRY POLK (deceased), Deputy Superintendent of Cicero Police Department, JERRY CHLADA, Superintendent of Police, Cicero Police Department, EMO CUNDARI, Town Assessor, ILLINOIS FRATERNAL ORDER OF POLICE COUNCIL, and NICOLE CHLADA, Secretary to Supt. Police Chief Jerry Chlada, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Meria Rodriguez sued the Town of Cicero, the Cicero Police Department, and nine Cicero officials and employees, alleging violations of 42 U.S.C. § 1983, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d-2000e *et seq.* Doc. 50. Defendants move under Civil Rule 12(b)(6) to dismiss the operative complaint. Doc. 54. The motion is granted as to the Cicero Police Department. *See Lewis v. Joliet Police Dep't*, 682 F. App'x 504, 504 n.* (7th Cir. 2017) ("[T]he Joliet Police Department[] is not a suable entity … ."). (The complaint also names Rodriguez's union, but she did not return a USM-285 form requesting service on the union, Doc. 8, so the

1

union was never served, warranting its dismissal without prejudice under Civil Rule 4(m).) As for the Town and the individual defendants, the motion is granted in part and denied in part.

## Background

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Rodriguez's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Rodriguez as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

### A.     General Background

Rodriguez, a 62-year-old Mexican-American woman, joined the Cicero Police Department as a parking enforcement officer in 2007. Doc. 50 at ¶¶ 5, 9. The complaint alleges that she was subjected to discrimination, sexual harassment, and retaliation from 2009 through her termination on July 21, 2021. *Id*. at ¶¶ 13, 40; Doc. 58 at 1. She filed administrative charges with the EEOC in September 2020, Doc. 50 at ¶ 7, and received a Notice of Right to Sue in October 2020, *id*. at ¶ 8.

### B.     Allegations Pertaining to Alleged Age Discrimination

In May 2020, Deputy Superintendent of Police Larry Polk asked Rodriguez to produce more parking tickets to match the production of her younger coworkers. Doc. 50 at ¶ 9; Doc. 58

at 1. Rodriguez told Polk that she was unable to do so due to her age. Doc. 50 at ¶ 9; Doc. 50 at 10.

### C. Allegations Pertaining to Alleged Race/Sex Discrimination

The complaint alleges that Defendants treated white and male employees more favorably than similarly situated non-white and female employees. Doc. 50 at ¶ 28; Doc. 58 at 4. Unlike their non-white and female colleagues, white male employees were given light duty assignments and granted workers compensation, and were not required to file for leave under the Family Medical Leave Act ("FMLA") or to call in every day while on FMLA leave. Doc. 50 at ¶ 28; Doc. 58 at 4, 8.

### D. Allegations Pertaining to Alleged Sexual Harassment

The complaint alleges that several Cicero officers and employees sexually harassed Rodriguez during her time as a Cicero police officer. First Deputy Oscar Clay harassed Rodriguez from 2009 through 2018 by repeatedly calling her sexy and asking to touch her biceps. Doc. 50 at ¶ 13.

In April 2014, Rodriguez asked Town President Larry Dominick for a promotion to a full-time position. *Id*. at ¶ 14. After Dominick offered Rodriguez the position, he began following her around, calling her, inviting her to sports outings and lunches, and making sexually harassing comments about her appearance. *Ibid*.; Doc. 58 at 5. Rodriguez rejected Dominick's advances, Doc. 58 at 5, yet his conduct persisted until October 2015. Doc. 50 at ¶ 15. In August 2017, Water District Supervisor David Duran told Rodriguez she could put a cake on his lap and eat it. *Id*. at ¶ 16.

Polk allegedly harassed Rodriguez on several occasions. In December 2019, he made a sexually suggestive comment regarding the cost of taking her to Las Vegas. Doc. 58 at 7, 15. In an earlier encounter, Rodriguez asked Polk to move back so she could pass by; he moved

3

slightly, requiring her to squeeze past him "barely touching him and [her] backside not touching him," which was a "very sexually offensive position." *Id*. at 15. Rodriguez reported those two incidents shortly after they occurred. *Ibid*. In January 2020, in the presence of the entire unit, Polk looked Rodriguez up and down and made a comment about her being cheap. Doc. 50 at ¶ 24. A month later, Polk complimented Rodriguez's boots. *Id*. at ¶ 26. Rodriguez again reported Polk's behavior and asked whether she could cease in-person communication with him, but her request was denied. Doc. 58 at 6. Polk also followed Rodriguez around town and repeatedly called her while she was off-duty to say that he "really cared about her." *Ibid*.

E.   **Allegations Pertaining to Retaliation**

The complaint alleges that several Cicero officials and employees retaliated against Rodriguez on numerous occasions. First, after Rodriguez rejected Dominick's advances, he retaliated by refusing to consider her request for a promotion. Doc. 50 at ¶ 15. Next, in June 2018, Rodriguez reported Clay to Human Resources Director Sarah Kusper for creating a sexually hostile working environment. *Id*. at ¶ 20. In July 2018, Deputy Director Serge Rocher retaliated against her for reporting Clay by writing her up for behavior that was not an infraction, with Assistant First Deputy Christopher Tomosino and Officer Ricardo Pina serving her with the write up. *Id*. at ¶ 21. Rodriguez reported that incident to Inspector General Klosak, and Kusper told Rodriguez to disregard the write up. *Ibid*.

The following day, Rocher, Tomosino, and Pino retaliated against Rodriguez by ordering her to perform less desirable job duties. *Id*. at ¶ 22. Rodriguez once again reported their behavior to Klosak and received a letter from Kusper stating that the change in job duties was not authorized. *Ibid*. In December 2019, Rodriguez was told that her office was closing and that she was being transferred to a less desirable position. *Id*. at ¶ 23.

4

In February 2020, Rodriguez suffered a work injury. Doc. 58 at 7. The next day, Polk refused to allow her to file a work injury report. Doc. 50 at ¶ 25. Later that month, Polk invited Rodriguez to meet in his office at 6:00 p.m. to write up the work injury report. Doc. 58 at 7-8. During that meeting, Polk made a comment about Rodriguez's boots that made her uncomfortable. *Id*. at 8. Still later that month, Superintendent of Police Jerry Chlada denied Rodriguez's request for light duty work and ordered her to take FMLA leave. *Ibid*.

Rodriguez was injured again in late August 2020 and reported the injury to Polk. Doc. 50 at ¶ 29; Doc. 58 at 8. She was once again denied light duty pending her surgery. Doc. 50 at ¶ 29; Doc. 58 at 8. After her surgery, Rodriguez's doctor cleared her to return to work on light duty, but Superintendent Chlada again denied her request. Doc. 50 at ¶ 30; Doc. 58 at 8. Chlada denied an additional request for light duty in January 2021 and ordered her to request FMLA leave. Doc. 50 at ¶ 32; Doc. 58 at 8. He also ordered Rodriguez to call in every morning at 5:00 a.m. even though she was on FMLA leave. Doc. 50 ¶ 33; Doc. 58 at 8. On July 21, 2021, Chlada and Kusper fired Rodriguez. Doc. 50 at ¶ 40; Doc. 58 at 8.

## Discussion

### I. ADEA Claim

The ADEA "makes it unlawful for an employer … 'to fail or refuse to hire … or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Carson v. Lake Cnty.*, 865 F.3d 526, 532 (7th Cir. 2017) (quoting 29 U.S.C. § 623(a)(1)). Rodriguez's ADEA claim is premised not on an adverse employment action, but rather on Polk's request that she produce the same number of parking tickets as younger employees. Doc. 50 at ¶ 9; Doc. 58 at 1. Polk's conduct cannot predicate a viable ADEA claim because Rodriguez was held to the *same* standard—not a different or more demanding standard—as similarly situated younger

5

employees. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993) ("Disparate treatment … captures the essence of what Congress sought to prohibit in the ADEA."); *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 368 (7th Cir. 2019) ("[T]he plaintiff must show evidence that … similarly situated employees who were not members of her protected class were treated more favorably.") (internal quotation marks omitted). Her ADEA claim is dismissed.

## II. Title VII Claims

Rodriguez brings three Title VII claims: (1) discrimination based on sex; (2) hostile work environment; (3) and retaliation. Those claims are properly brought only against the Town, not against the individual defendants. *See Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 930 (7th Cir. 2017) ("[T]here is no individual liability under Title VII.").

### A. Statute of Limitations

A plaintiff in Illinois who wishes to bring a Title VII claim must first file an administrative charge with the EEOC within 300 days of the allegedly unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e); *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 463 (7th Cir. 2016); *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 839 (7th Cir. 2014). Failure to file a charge within that time renders the claim untimely. *See Boston*, 816 F.3d at 463.

Defendants argue that because Rodriguez filed her EEOC charge on September 11, 2020, she cannot bring any Title VII claims arising from pre-November 19, 2019 conduct. Doc. 54 at 8. This argument does not implicate Rodriguez's sex discrimination claim because it rests solely on post-November 19, 2019 conduct. The question whether Rodriguez's hostile work environment and retaliation claims can rest on pre-November 19, 2019 conduct turns on application of the continuing violation doctrine.

In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court held that the continuing violation doctrine does not apply to "discrete" and easily

identifiable acts even if those acts are related to earlier discriminatory or retaliatory acts over a continuous period. *Id*. at 110-14. Thus, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id*. at 113. By contrast, hostile work environment claims involve the accumulation of repeated conduct over time, and thus "[i]n order for [a] charge [alleging hostile work environment] to be timely, the employee need only file [it] within … 300 days of any act that is part of the hostile work environment." *Id*. at 118; *see also Bass*, 746 F.3d at 839 (discussing the distinction between discrete and cumulative violations); *Adams v. City of Indianapolis*, 742 F.3d 720, 730 (7th Cir. 2014) ("[*Morgan*] distinguished claims involving discrete acts of discrimination from claims alleging a hostile work environment: Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct.") (internal quotation marks omitted) (quoting *Morgan*, 536 U.S. at 115). Because Rodriguez's hostile work environment claim rests in part on post-November 30, 2019 conduct by Polk, Doc. 50 at ¶¶ 24-26; Doc. 58 at 6-7, 15, the continuing violation doctrine allows that claim to also rest on earlier conduct.

Pressing the contrary result, Defendants cites *Milligan-Grimstad v. Stanley*, 877 F.3d 705 (7th Cir. 2017), which declined to apply the continuing violation doctrine where there was a gap of "two or three years" between episodes of harassment. *Id*. at 713. There were no such gaps here, as Rodriguez alleges that she was subjected to harassing conduct nearly every year from 2014 through 2021. Doc. 50 at ¶¶ 13-14, 16, 24, 26.

Unlike the hostile work environment claim, Rodriguez's retaliation claim is premised on discrete, identifiable acts such as failure to promote and assignment to less desirable duties. *Id*. at ¶¶ 15, 21-23. It follows that the continuing violation doctrine does not apply, and therefore

7

that the retaliation claim can rest only on post-November 19, 2019 conduct. *See Morgan*, 536 U.S. at 114 (holding that failure to promote is a discrete act); *Adams*, 742 F.3d at 730 (rejecting the plaintiff's argument that successive failures to promote over several years were continuing violations, reasoning that "[t]he employment actions challenged here fall squarely within the Supreme Court's list of discrete acts—they are failures to promote"); *Jackson v. City of Chicago*, 552 F.3d 619, 624 (7th Cir. 2009) ("The acting-up decisions [i.e., working-up-in-grade opportunities] were discrete acts which could be considered only if they occurred within the appropriate time period covered by his EEOC charge.").

      **B.**      **Sex Discrimination**

Title VII's antidiscrimination provision makes it "unlawful … for an employer … to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "A complaint alleging sex discrimination under Title VII need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (internal quotation marks omitted); *see also EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 781-82 (7th Cir. 2007) (noting the simplicity of pleading a Title VII discrimination claim). Under that standard, the complaint's allegation that Rodriguez sought light duty assignments and was denied, and that the denial was due to sex discrimination, Doc. 50 at ¶ 28, is sufficient to survive a motion to dismiss. *See Carlson*, 758 F.3d at 827 ("In Carlson's second amended complaint (the operative one), she alleged which positions she sought and was denied, and she attributed the denial to sex discrimination, satisfying the standard applied in *Swanson* [*v. Citibank, N.A.*, 614 F.3d 400 (7th Cir. 2010)], *Tamayo* [*v. Blagojevich,* 526 F.3d 1074 (7th Cir.

2008)], and *Concentra* [*EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773 (7th Cir. 2007)].").

### C. Hostile Work Environment

Title VII's discrimination provision "encompasses the creation of a hostile work environment that is severe or pervasive enough to affect the terms and conditions of employment." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 561 (7th Cir. 2016) (internal quotation marks omitted). To state a sex-based hostile work environment claim, a plaintiff must allege facts sufficient to show "that she was: (1) subjected to unwelcome sexual conduct, advances, or requests; (2) because of her sex; (3) that were severe or pervasive enough to create a hostile work environment; and (4) that there is a basis for employer liability." *Lapka v. Chertoff*, 517 F.3d 974, 982 (7th Cir. 2008) (internal quotation marks omitted). Defendants argue that Rodriguez's allegations "do not sufficiently plead a hostile work environment claim." Doc. 54 at 5-6. Defendants are incorrect.

The "severe or pervasive" element of Rodriguez's claim "is in the disjunctive—the conduct must be either severe or pervasive." *Vance v. Ball State Univ.*, 646 F.3d 461, 469 (7th Cir. 2011). This means that "one extremely serious act of harassment could rise to an actionable level as could a series of less severe acts." *Hall v. City of Chicago*, 713 F.3d 325, 330 (7th Cir. 2013). A court addressing whether harassment is "severe or pervasive" must consider "factors like the frequency of improper conduct, its severity, whether it is physically threatening or humiliating (as opposed to a mere offensive utterance), and whether it unreasonably interferes with the employee's work performance." *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016); *see also Johnson*, 892 F.3d at 900 (similar). In so doing, the court must bear in mind that Title VII does not impose a "general civility code" and that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the

9

terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation and internal quotation marks omitted). That said, "the [work] environment need not reach the point of 'hellishness'" to be actionable. *Johnson*, 892 F.3d at 901; *accord Gates*, 916 F.3d at 637 ("While a 'hellish' workplace is surely actionable, plaintiffs' evidence need not show a descent into the Inferno."). "Whether harassment was so severe or pervasive as to constitute a hostile work environment is generally a question of fact for the jury." *Johnson*, 892 F.3d at 901.

Rodriguez alleges that she was sexually harassed by Clay for over a decade, and was inappropriately pursued, followed, and contacted by Dominick and Polk for an extended period. Doc. 50 at ¶ 13-16, 24, 26; Doc. 58 at 6-7, 15-16. Those allegations suffice, at least for purposes of a Rule 12(b)(6) motion, that the harassment she suffered was severe or pervasive. *See Orton-Bell v. Indiana*, 759 F.3d 768, 774-75 (7th Cir. 2014) (holding that a "constant barrage of sexually charged comments" was sufficiently severe or pervasive); *Jackson v. Cnty. of Racine*, 474 F.3d 493, 500 (7th Cir. 2007) (holding that a combination of unwanted touching, offensive sex-based remarks, and the harasser's "clumsy effort to induce [the plaintiff] to succumb to sexual relations in exchange for a promotion" could support a finding that the harasser's conduct "alter[ed] the terms and conditions of [the plaintiff's employment]"); *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002) (holding that "a relentless pattern of lesser harassment that extends over a long period of time also violates [Title VII]").

### D. Retaliation

Title VII's antiretaliation provision "prohibits retaliation against employees who engage in statutorily protected activity by opposing an unlawful employment practice or participating in the investigation of one." *Lord*, 839 F.3d at 563 (citing 42 U.S.C. § 2000e-3(a)). To state a Title VII retaliation claim, Rodriguez must allege that: "(1) [s]he engaged in a statutorily protected

activity, (2) h[er] employer took a materially adverse action against h[er], and (3) there is a causal link between the protected activity and the adverse action." *Mollet v. City of Greenfield*, 926 F.3d 894, 896 (7th Cir. 2019).

Defendants incorrectly contend that Rodriguez fails to identify a protected activity or to draw a causal link between her complaints of sex-based harassment and adverse actions. Doc. 54 at 7. Rodriguez alleges that after November 19, 2019, she was retaliated against for complaining about and reporting a sexually hostile work environment, and that the retaliation consisted of being transferred to a less desirable position, denied light duty work and workers compensation, ordered to take FMLA leave, required to call in every day, and terminated. Doc. 50 at ¶ 23; Doc. 58 at 7-9. Those allegations are sufficient at this stage to state a viable retaliation claim. *See Coleman v. Donahoe*, 667 F.3d 835, 861 (7th Cir. 2012) (finding protected activity and a causal link where the plaintiff alleged that she was denied sick leave, received unpleasant work assignments, relocated to an unpleasant office, and suspended shortly after reporting discrimination).

### III. Section 1983 Claims

Rodriguez alleges that Defendants discriminated against her on the basis of sex in violation of the Equal Protection Clause. Employment-related discrimination claims brought under § 1983 are analyzed under standards governing Title VII claims. *See Huri v. Off. of the Chief Judge*, 804 F.3d 826, 835 (7th Cir. 2015) ("When a plaintiff uses § 1983 as a parallel remedy to a Title VII harassment claim, the prima facie elements to establish liability are the same under both statutes."); *Davis v. Wis. Dep't of Corr.*, 445 F.3d 971, 976 (7th Cir. 2006) ("The same standards for proving intentional … discrimination apply to Title VII and § 1983 equal protection claims.").

11

A. **Claims Against Individual Defendants**

"Individual liability under § 1983 … requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (alteration and quotation marks omitted). In opposing dismissal of her § 1983 claims against the Cicero officials and employees, Rodriguez contends that only Polk, Superintendent Chlada, and Nicole Chlada had the requisite personal involvement. Doc. 58 at 2. Accordingly, Rodriguez has forfeited her § 1983 claims against Dominick, Rocher, Clay, Tomosino, Pina, and Town Assessor Emo Cundari. *See Firestone Fin. Corp*, 796 F.3d at 825 ("[A] party generally forfeits an argument or issue not raised in response to a motion to dismiss.").

Rodriguez sufficiently alleges Polk's personal involvement in the alleged harassment, discrimination, and retaliation. As for harassment, Rodriguez alleges that Polk made several sexually suggestive comments towards her, placed her in an uncomfortable, "very sexually offensive position," repeatedly called her off duty, and followed her around town. Doc. 50 at ¶¶ 24, 26; Doc. 58 at 6-7, 15-16. Rodriguez's discrimination claim rests in part on the allegation that white male employees were granted light work duty and workers compensation while non-white female employees were not, Doc. 50 at ¶ 28; Doc 58 at 4, 8, and her retaliation claim rests in part on the allegation that she was denied workers compensation and light duty assignments and ordered to take FMLA leave. Doc. 50 at ¶¶ 29-30, 32-33; Doc. 58 at 7-9. The complaint alleges that in February 2020, Polk was directly involved with that discriminatory and retaliatory treatment when he refused to allow Rodriguez to file a work injury report, Doc. 50 at ¶ 25, which is sufficient at this stage to plead personal involvement.

Superintendent Chlada is alleged to have had personal involvement in the alleged discriminatory and retaliatory treatment, but not the harassment. The complaint does not tie Superintendent Chlada to any of the alleged harassment. But the complaint does allege that he

denied Rodriguez's request for light duty work, ordered her to take FMLA leave, and required her to call in everyday while on FMLA leave, Doc. 50 at ¶ 28-29, 32-33; Doc. 58 at 8, and it further alleges that similarly situated white males were not subjected to the same treatment, Doc. 50 at ¶ 28, Doc. 58 at 8. Those allegations are sufficient at this stage to plead that Superintendent Chlada has personal involvement for purposes of the retaliation and discrimination claims.

The complaint does not allege that Nicole Chlada had any personal involvement in the alleged mistreatment of Rodriguez. Although Nicole Chlada is alleged to be Superintendent Chlada's sister and secretary and is charged in a conclusory manner with being a "decisionmaker," Doc. 58 at 2, the complaint fails to allege any conduct directed towards Rodriguez or any facts giving rise to a plausible inference that she was in fact a decisionmaker. *See Coleman v. Donahoe*, 667 F.3d 835, 848 (7th Cir. 2012) ("Under Title VII, a decisionmaker is the person responsible for the contested decision.") (internal quotation marks omitted). The § 1983 claims against Nicole Chlada are dismissed.

B. **Town of Cicero**

To bring a § 1983 claim against the Town, Rodriguez must plead one of the bases for liability articulated in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). To succeed on a *Monell* claim, "[a] plaintiff must show that the [constitutional] violation was caused by (1) an express government policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021). Rodriguez does not allege that the Town had an express policy condoning harassment, discrimination, or retaliation in the workplace. So, her *Monell* claim survives only if she alleges a constitutional violation

13

caused by (1) a widespread practice that amounted to a custom approaching the force of law or (2) an official with final policymaking authority.

The Town argues that Rodriguez failed to plead any "allegations regarding a widespread pattern or practice of discriminatory or retaliatory conduct … ." Doc. 54 at 13. Rodriguez's reply brief did not address Defendants' argument, thereby forfeiting the point. *See Webb v. Frawley*, 906 F.3d 569, 581 (7th Cir. 2018) ("Webb has waived any counterarguments he may have had by not responding to Frawley's argument on this topic in his reply brief."). In any event, Rodriguez's allegation that "[t]he discriminatory conduct directed at Plaintiff is a part of a custom, pattern and practice of unlawful harassment and discrimination against female employees," Doc. 50 at 44, is a mere legal conclusion that, without more, does not sufficiently allege a widespread practice claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations."). Likewise, Rodriguez does not sufficiently alleged that Nicole Chlada made any decisions, let alone that she is a final policymaker. And while Rodriguez does allege that Superintendent Chlada made discriminatory and retaliatory decisions, she does not allege, as she must, that he is "responsible for establishing final government policy on a particular issue." *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 675 (7th Cir. 2009) ("The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. Rather, such an official also must be responsible for establishing final government policy on a particular issue.") (internal quotation marks and citations omitted). It follows that Rodriguez's *Monell* claim is dismissed.

## Conclusion

Defendants' motion to dismiss is granted as to Rodriguez's claims against the Cicero Police Department and the union; her ADEA claim; her Title VII claims against the individual defendants; her § 1983 claims against Nicole Chlada, Dominick, Rocher, Clay, Tomosino, Pina, Cundari, and the Town of Cicero; and her § 1983 hostile work environment claim against Superintendent Chlada. The Town, Polk, and Superintendent Chlada shall answer the surviving portions of the complaint by June 22, 2022.

June 1, 2022

_____
United States District Judge